**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| WHITE – SPUNNER CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 10-158 |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | |
| OWNERS INSURANCE COMPANY, | ) | |
| and EMPLOYERS MUTUAL CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF, WHITE-SPUNNER CONSTRUCTION, INC.'S OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, MOTIONS
TO STAY PROCEEDINGS**

**COMES NOW**, Plaintiff White-Spunner Construction, Inc. ("White-Spunner") and gives

this single response to the three Motions to Dismiss/Stay[1] filed by Defendants Zurich American

Insurance Company ("Zurich"), Owners Insurance Company ("Owners") and Employer's

Mutual Casualty Company ("Employer's Mutual").

### Introduction

This suit for declaratory judgment arises from the tragic death of Richard Dewayne

Dueitt following a construction site accident on March 17, 2009, in Mobile, Alabama. Plaintiff,

White-Spunner was the general contractor on the project where the accident occurred. White-

Spunner hired several subcontractors for various aspects of the project. As a requirement for

their employment, each subcontractor was required to add White-Spunner as an additional

insured to their general liability insurance policies. All of the subcontractors implicated in

---

[1] For the convenience of the Court, and since the respective Motions to Dismiss make the same arguments, Plaintiff gives this single Response to the three pending Motions to Dismiss filed by Defendants. [Documents 13, 20 and 24].

Dueitt's death provided certificates of insurance to White-Spunner prior to the accident but included that White-Spunner as an additional insured under their respective policies.

As a result of Dueitt's death, White-Spunner, along with several other subcontractors, was sued in the Circuit Court of Mobile County, Alabama (a copy of the lawsuit is attached as Exhibit "A"). In paragraph 6 of Dueitt's complaint, his estate seeks recovery against White-Spunner for the "wrongful actions or inactions of its subcontractors and vendors, Building Materials Wholesale, Inc.; Jerry Reed Trucking; McAdams Vinyl Siding & Trim, Inc.; Livingston Construction, Inc.; and/or Buena Vista Construction, LLC, which approximately caused the death of Richard Dewayne Dueitt, Sr." As a result of these claims for vicarious liability, White-Spunner tendered its defense to the named carrier defendants, all of whom have refused to defend White-Spunner as an additional insured against the allegations of wrongful conduct by their own insureds.

Viewed collectively, Defendants' Motions to Dismiss assert four main arguments:

I.      It is too early to decide any coverage issues;

II.     Absence of an indispensible party;

III.    Amount in controversy; and

VI.     The court should stay these proceedings if it does not dismiss White-Spunner's Complaint. White-Spunner refutes these arguments one by one as follows:

### I. The Duty to Defend Issue is not Premature.

White-Spunner concedes that a ruling on the duty to indemnify issue could be premature absent a judgment in the underlying case. However, the lack of a judgment does not divest this Court of jurisdiction. In declaratory judgment actions involving coverage disputes, courts have treated the duty to indemnify separately from the duty to defend. *Colony Ins. Co. v. Flloyd's*

2

*Prof'l Tree Serv.*, 2008 WL 2705123 (M.D. Ala. July 9, 2008) ("In contrast to the duty to indemnify, courts recognize a judiciable controversy exists when the insurance company denies that it has a duty to defend the insured under the policy.")  While it may be appropriate for the Court to decide the issue of indemnity after the underlying litigation is resolved, "[t]he decision whether an insurance company is obligated to defend must be made at the preliminary stage of the proceedings." *Id.* citing *Auto-Owners Ins. Co.* v. *Toole,* 947 F.Supp. 1557, 1566 n. 25 (M.D. Ala. 1996); *State Farm Fire & Cas. Ins. Co.* v. *Myrick,* 2007 U.S. Dist. LEXIS 78538 (M.D. Ala.)("While the court agrees with the [defendants] that the issue of the duty to indemnify is not ripe, there is a present controversy surrounding the duty to defend, and this claim should not be dismissed.").

In *Auto-Owners Ins. v. Hickory Springs Estates Homeowners Assn., Inc.,* 2008 WL 5381971, * 5 (M.D. Ga. Dec. 23, 2008) the court stated that "[t]o dismiss or stay this action in its entirety would deny Auto-Owners prompt resolution of the actual controversy surrounding insurance coverage, especially its duty to defend, and would not promote the objectives of federalism, efficiency, and comity that underlie the Federal Declaratory Judgment Act and Brillhart/Wilton doctrine."  It went on to explain that "[t]his Court's determination that Auto-Owner's present duty to defend claim may go forward leaves unresolved the present duty to indemnify claim. A determination of liability in the underlying state court action could moot that issue in this action. Therefore, discretion and common sense dictates. . . . . [t]his action will proceed to final ruling on the duty to defend issue. The duty to indemnify issue will not be considered until the earlier of (a) a final disposition of the underlying state court action; or (b) a ruling on the duty to defend." *Id. Citing Atlantic Cas. Ins. Co v. GMC Concrete,* 2007 WL

3

4335499, at \*5-6 (S.D. Ala. December 7, 2007); *Smithers Construction, Inc. v. Bituminous Cas.*

*Corp.*, 563 F. Supp. 2d 1345, 1349 (S.D. Fla. 2008).

      This Court should follow the same path taken in *Atlantic Cas. Co. v. GMC Concrete*,

when it rightly rejected requests to dismiss the declaratory action and instead retained

jurisdiction and moved forward with the duty to defend issue.  This Court stated:

> "This court concludes that it should retain jurisdiction to hear both the duty to
> defend and the indemnification issues. The duty to defend is more extensive than the
> duty to indemnify. If the court determines that there is a duty to defend, it may well
> be appropriate not to then reach the further issue of duty to indemnify. However, a
> determination that there is no duty to defend may well determine the duty to
> indemnify issue. Both discretion and common sense mandate that the court retain
> jurisdiction at least until the duty to defend issue is determined...."

2007 WL 4335499, \*5-6. (S.D. Ala. Dec. 7, 2007). *Citing Employers Mut. Cas. Co. v. Evans*, 76

F. Supp. 2d 1257, 1262 (N.D. Ala. 1999).  Similarly, this Court, in *Pennsylvania National*

*Mutual Casualty Ins. Co. v. Roberts Brothers, Inc.*, 550 F. Supp. 2d 1295 (S. D. Ala. Mar. 11,

2008), was asked to determine the insurance carrier's duty to defend and indemnify.  This Court

dismissed the indemnity determination without prejudice while deciding the insurer's duty to

defend the insured.  *Id.* at 1303.  Likewise, in the present action, nothing prevents this Court

from moving forward on the issues of the carriers' duties to defend- especially in light of the

significant costs being incurred for White-Spunner's defense.  Therefore, White-Spunner's duty-

to-defend claim is not premature in any aspect.

      Defendants' argument that this action is premature is further flawed because the statute of

limitations on a duty to defend begins to run once the insurance company has refused to defend

the insured.  *New Appleman on Insurance Law*, Library Edition, §7.06[2][b].  The carriers have

refused to defend its additional insured, White-Spunner, making the dispute ripe for timely

resolution.  It defies logic that White-Spunner's claim for a defense is premature while the statute

of limitations is concurrently running on the same claim. Therefore, this Court should move forward and resolve the claim for a defense because this current, ongoing duty involves significant costs that warrants early resolution. Otherwise, if the denial of a defense does not create a ripe controversy for determination, insurers could always deny this duty as a matter of course, making the duty to defend purely illusory.

**II.     The Estate of Dueitt is neither a Necessary nor Indispensable Party and this action should proceed without Dueitt.**

"Rule 19(a) determines whether a person or entity is a 'necessary' party. If not, the inquiry is at an end; if so, Rule 19(b) determines whether the person or entity is an 'indispensable'" party. *E.g., Laker Airways, Inc. v. British Airways, PLC,* 182 F.3d 843, 847-48 (11th Cir.1999); *Bowman v. Morgan,* 2006 WL 463863, *3 (S. D. Ala. Feb. 24, 2006).

**A.     Dueitt is not an necessary party.**

The estate of Dueitt does not need to be a party to this action in order for White-Spunner to obtain a determination of its rights under the insurance policies at issue. As to the duty to defend, Dueitt has absolutely no interest in White-Spunner's pursuit of defense costs as an additional insured under the three policies at issue. *See Safelite Group, Inc. v. Zurich American Ins. Co.,* 2006 WL 783359 (S.D. Ohio Mar. 24, 2006)(claimant was not a necessary party in an action filed by the insured to determine Zurich's duty to defend it in the underlying lawsuit). *See also Zurich v. Health Systems Intergration,* 1998 WL 126920 *4 (E. D. Penn. Mar. 19, 1998) (" ...the court finds that IBC [the claimant] is not a necessary party under Rule 19(a). IBC need not be joined under Rule 19(a)(1), because the present action concerns only whether Zurich will defend HSII and Compucare in their underlying dispute with IBC, and pay a judgment to IBC should it win. IBC has a financial interest in the outcome of the dispute, but no legal interest." (Emphasis added). As noted by a prominent insurance treatise: "many courts have held that

these [injured claimants] need not be joined in order for a declaratory relief action to proceed." *New Appleman on Insurance Law*, Library Edition, §7.05 [3][c], citing *Monsanto Company v. Aetna Cas. & Sure. Co.*, 565 A. 2d 268, 270-271 (Del. Super. Ct. 1989). In *Monsanto* –as here, it was the insured that brought the declaratory judgment action seeking defense and indemnification for claims made by an underlying plaintiff.[2] The carriers in *Monsanto* asserted that the declaratory judgment action should be dismissed because the underlying claimants were not parties to the underlying action. The court began its analysis by noting that "this court can render a complete resolution of the issues involved in this suit because all of the parties to the insurance contracts are represented. Thus, the lack of the claimants' involvement in this suit would not render judgment impossible." *Monsanto*, at 272. The court went on to hold that the underlying claimants' presence in the action was not necessary to render a complete judgment on the obligations under the insurance contracts. *Id*. Further, the court noted that even if the underlying claimants had an interest in the litigation, their interest was adequately represented by the insured. *Id*. at 271. The *Monsanto* court held that "joinder is not required when a person's interests are fully protected by the parties already present in the case." *Id*.

In this case, Dueitt's sole interest in this declaratory judgment action is economic and solely related to the claims for indemnification. And Dueitt's economic interest is protected by White-Spunner because White-Spunner has an equal or greater interest in obtaining indemnification from the carriers, as evidenced by the fact that separate coverage counsel has

---

[2] The District Court for the Southern District of Illinois analyzed the issue of whether or not underlying plaintiffs are necessary parties in a declaratory action between an insured and insurer in *Georgia-Pac. Corp. v. Sentry Select Ins. Co.*, 2006 WL 1525678 (S.D.Ill.2006). The court discussed the distinct difference between lawsuits commenced by insureds in favor of a duty to defend and actions brought by insurers against insureds regarding the obligation to provide coverage. *Georgia-Pac. Corp.*, 2006 WL 152678, at *3 (citing *Fathers of the Order of Mount Carmel, Inc. v. Nat'l Ben Franklin Ins. Co. of Ill.*, 697 F.Supp. 971 (N.D.Ill.1997)) (reasoning that if the declaratory judgment action had been filed by the insured against the insurer, the interests of the injured party would be adequately served). Because this action was commenced by White-Spunner, Dueitt is not a necessary party.

filed this action to pursue defense and indemnity for White-Spunner. *See Georgia-Pacific Corp. v. Sentry Select Ins.* 2006 WL 152678, *7 (S. D. Ill. May 26, 2006) ("because this declaratory judgment action was filed by an *insured* (albeit an "additional" insured), Bryan and Svetlana Elkins, as the underlying claimants, are not necessary parties for the duty to defend portion of this litigation as their interests will be adequately protected by Ga-Pac [the additional insured]. The duty to defend claim is resolved by merely interpreting the Policy with the Underlying Action." (emphasis original). Dueitt has no interest in White-Spunner's defense[3] and White-Spunner's interest in seeking indemnification from the three carriers completely aligns with any interest Dueitt may have. *See CFI Wisconsin, Inc., v. Harford Fire Ins. Co.*, 230 F.R.D. 552, 554 (W.D. Wis. 2005) ("when the insured institutes an action against its insurer for declaratory judgment arguing that the insurer is obligated to it then the insured's position protects the interest of the absent party because both parties want the policy to be viable.").

The carriers have failed to offer any evidence that Dueitt would not be protected by White-Spunner's efforts to obtain coverage. In reality, Dueitt would have to incur great legal costs to be a party to a declaratory judgment action. Therefore, Dueitt is not a necessary party warranting dismissal. *See Randall v. Water Works & Sewer of City of Birmingham*, 885 So. 2d, 757, 764 (Ala. 2003), "the absence of a party who has an interest in the litigation but who is not a necessary party does not destroy jurisdiction." *See Board of Trustees of Employees' Retirement Systems v. Tally*, 244 So. 2d 791 (Ala. 1971) ("it is not fatal to a declaratory-judgment action to omit an interested person as a party, if that person's presence is not necessary to a determination of the controversy between the parties who are before the court."). *See also American Economy*

---

[3] "Lynchval [the non-party claimant] has no stake in which lawyers defend Winklevoss [the insured]; either way, it must face an adversary." *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 174 F.R.D. 416, 418 (N. D. Ill. 1997), holding that the claimant was neither a necessary nor indispensable party to the declaratory judgment action.

7

*Ins. Co. v. Rutledge*, 2006 WL 392487, \*2 (M. D. Ala. Dec. 20, 2006), where the court held that the co-owner of the property who was not named on the policy was not a necessary party because the named insured "is the only person whose interests are directly affected by this litigation."

In *Mt. Hawley Ins. Co. v. Sandy Lake Prop., Inc.*, the Eleventh Circuit held that in order for a underlying claimant to have a legally protectable interest, it must be more than economic interest. 425 F. 3rd 1308, 1311 (11th Cir. 2004) *citing U.S. v. South Florida Water Management Dist.*, 922 F. 2d 704, 710 (11th Cir. 1991). In *Mt. Hawley*, the Eleventh Circuit noted that the underlying claimant's interest in the subject matter of the declaratory action was purely economic. The claimant was not a party to the Mt. Hawley insurance policy and had no legally protectable interest in that policy. Therefore, the Eleventh Circuit affirmed the trial court's refusal to allow the underlying claimant to intervene in the declaratory judgment action between the insured and its insurer. The Third Circuit reached a similar conclusion in the *Reddy Mutual Ins. Co. v. Treesdale, Inc.*, 419 F. 3rd 216 (3rd Cir. 2005). In *Treesdale*, the Third Circuit held that "the holding in *Liberty Mutual Ins. v. Pacific Indemnity*, 76 F.R.D. 656 (W.D. Pa. 1977) is thoroughly consistent with the general principle announced in *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F. 3rd 361 (3rd Cir. 1995), that "a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Treesdale*, at 224. In this case, Dueitt is not a party to any of the insurance policies at issue, has no interest in the duty to defend determination, and has only an economic interest in the indemnification that is being pursued by

8

White-Spunner.   Therefore, Dueitt is hardly an indispensible party whose absence requires dismissal.[4]

One basis on which a party may be a required, or necessary party is if, "in that person's absence, the court cannot accord complete relief among existing parties." Fed.R.Civ.P. 19(a)(1)(A). A court is able to afford complete relief when a party's absence "does not prevent the plaintiffs from receiving their requested ... relief." *Sac & Fox Nation of Missouri v. Norton,* 240 F .3d 1250, 1258 (10th Cir. 2001). Here, this Court could easily resolve the entire duty to defend claims among the existing parties without any involvement by Dueitt. Indeed, Dueitt could not be considered a necessary party by any stretch when it comes to determining the carriers' obligations to defend White-Spunner.

**B.      Even if Dueitt was a necessary party, this Court should analyze the Rule 19(b) factors and hold that this action should proceed without Dueitt.**

Defendants' are overzealous in their attempts to dismiss this action on Rule 12(b)(7) grounds. Defendants seek to have this entire case dismissed because they claim Dueitt is an "indispensible party" to this action. However, this approach would circumvent the procedure of Rule 19. *See Private Business, Inc. v. Ala. Exterior Supply, Inc.,* 2000 WL 33156437, *3 (S. D. Ala. Dec. 19, 2000) ("The court must use a two-step analysis in determining whether a party should be joined under Rule 19. The court must first determine if the party is necessary using those factors listed in Rule 19(a), and then determine if the party is indispensable and whether the action should be dismissed using those factors listed in Rule 19(b)."). Here, since Dueitt cannot be joined as a party without destroying diversity of citizenship, even if this court

---

[4] Dueitt's status as a necessary party is completely diluted if this Court stays the claim for indemnification and moves forward on the defense determination.

determines that Dueitt is a necessary party, the Rule 19(b) factors indicate that this action should proceed without Dueitt as a party and there should be no dismissal.

The Wright & Miller treatise explains:

When joinder of someone who falls within Rule 19(a) is not possible, the court then must look to Rule 19(b) to decide "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." If the absentee is held not to be indispensable under subdivision (b), then joinder is not required if it would have the effect of destroying the court's diversity-of-citizenship jurisdiction.

FPP § 1611, 7 Fed. Prac. & Proc. Civ. § 1611 (3d ed.)(Citations omitted)(emphasis added).

There is no dispute that Dueitt, an Alabama citizen, would destroy diversity by being joined in this federal action. Therefore, because joining Dueitt in this action would destroy diversity, this action should proceed without Dueitt as a party if this Court finds that the Rule 19(b) factors render Dueitt to be dispensable. The Wright & Miller treatise further outlines the proper procedure for this Court:

When faced with a motion under Rule 12(b)(7), the district court will decide whether the absent person should be joined as a party. If it decides that question in the affirmative, the district judge will order the individual or entity who is not before the court brought into the action. However, if the absentee cannot be joined, the court must then determine, by balancing the guiding factors set forth in Rule 19(b), whether to proceed without him or to dismiss the action. Rather than being formalistic, the court's consideration of Rule 19(b) factors follows a pragmatic analysis of the particular circumstances of each case. The courts are reluctant to grant motions to dismiss of this type. Thus, a Rule 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action. In general, dismissal is warranted only when the defect is serious and cannot be cured.

FPP § 1359, 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed.)(Citations omitted)(emphasis added).

Federal Rule of Civil Procedure No. 19(b) provides the factors to be considered by this Court:

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)     the extent to which any prejudice could be lessened or avoided by:

    (A)     protective provisions in the judgment;

    (B)     shaping the relief; or

    (C)     other measures;

(3)     whether a judgment rendered in the person's absence would be adequate; and

(4)     whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

When this Court holds the 4 factors of Rule 19(b) up against the light of this pending declaratory judgment action it can only come to one conclusion: this action should proceed without Dueitt. Under factors (1)-(3), there would be no prejudice to Dueitt no matter how this court rules on the duty-to-defend issue because Dueitt has no interest in how White-Spunner funds its defense of the state court action. See *Evangelical Lutheran Church of America v. Atlantic Mut. Ins. Co.*, 173 F.R.D. 507, 508-509 (N. D. Ill. 1997) ("Cindy Clark [underlying claimant] is not prejudiced by her absence. Both her and the Evangelical Lutheran Church want the same thing- *i.e.*, that the alleged wrongful conduct is covered by the insurance policies. Because of this "identity of interest" between Cindy Clark and the Evangelical Luther Church, the first [Rule 19(b)] factor weighs *heavily* against finding that Cindy Clark is indispensable.") (emphasis original). As to the duty-to-indemnify issue, any interest Dueitt has is completely aligned with White-Spunner's because both Dueitt and White-Spunner would prefer to have the Defendants underwrite any judgment in the state court action. And this Court's determination of coverage would be adequate in the absence of Dueitt because the determination can be made by looking only to the policy language and the

11

pleadings before the Court. Lastly, under factor (4), White-Spunner would not have an adequate remedy if this action were dismissed because the Defendant insurers are not parties to the state court action. Therefore, the factors of Rule 19(b) encourage this Court to deny Defendants' Motions to Dismiss based on Rule 12(b)(7). This action is simply about analyzing insurance coverage between White-Spunner and the Defendant insurers in the federal forum. Any determination by this Court will not prejudice Dueitt in the underlying wrongful death case pending in state court.

## III.    The Amount in Controversy is satisfied in this case.

### A. The amount in controversy exceeds $75,000 because the underlying Plaintiff has made a demand on Plaintiff for $15,000,000.

Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Where jurisdiction is based on a claim for indeterminate damages, the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum. *QBE Ins. Corp. v. Dolphin Line, Inc.* CA 09-0190-CG-C, 2009 WL 3248016 (S.D. Ala. Oct. 6, 2009). When a federal declaratory judgment action for insurance coverage, such as this one, stems from a state court action the court will look to the amount in controversy in the state court action. *Metro. Group Prop. & Cas. Ins. Co. v. Thompson*, CIVA 09-0361-WS-B, 2009 WL 4456342 (S.D. Ala. Nov. 25, 2009) *citing State Farm Fire & Cas. Co. v. Knoblett,* 561 F. Supp. 2d 1256, 1257 (N.D. Ala. 2008). ("Because the instant suit involves only insurance coverage issues as they relate to the underlying state court action, the court must look to the amount in controversy in the

12

underlying state court suit to determine the amount in controversy for the purposes of diversity jurisdiction.")

When the amount in controversy is based on the value of a lawsuit, the party asserting federal jurisdiction must provide a document containing "an unambiguous statement that clearly establishes federal jurisdiction" and the document establishing the jurisdictional amount must originate "from the plaintiff [in the state action]-be it the initial complaint or a later received paper...." *State Farm Fire & Cas. Co. v. Knoblett*, 561 F. Supp. 2d 1256, 1257-1258 (N.D. Ala. 2008). Where the complaint in the underlying state suit does not provide an unambiguous statement that clearly establishes the jurisdictional amount the inquiry must focus on some other document from the plaintiff in the underlying action. *Id.*

Here, in the underlying litigation, **Dueitt's counsel made demand on Defendants for $15,000,000.** *See* Joseph M. Brown Jr., Esq.'s February 19, 2010 letter attached hereto as Exhibit "B". Therefore, the amount in controversy in this related action is clearly in excess of $75,000. *See QBE Ins. Corp. v. Dolphin Line, Inc.*, CA 09-0190-CG-C, 2009 WL 3248016 (S.D. Ala. Oct. 6, 2009)(denying Defendant's Motion to Dismiss a federal declaratory judgment complaint for insurance coverage because Plaintiff satisfied the jurisdictional amount by presenting letters from counsel in the underlying litigation indicating demand for damages estimated to fall "somewhere between $2 million and $3.5 million.") *See also Dominguez v. Peek*, CIV.A. 09-00842-KD-B, 2010 WL 1658550 (S.D. Ala. Apr. 16, 2010) *report and recommendation adopted*, CIV.A.09-00842-KD-B, 2010 WL 1851617 (S.D. Ala. May 5, 2010)(Email from counsel in underlying wrongful death action making settlement demand for $1,500,000 was sufficient to establish the jurisdictional amount in federal court); *Bankhead v. Am. Suzuki Motor Corp.*, 529 F.Supp.2d 1329, 1334 (M.D. Ala. 2008) (finding that initial

13

settlement demand letter established the amount in controversy); *Hudson v. McGowan,* 3:10CV56-WHA WO, 2010 WL 1416510 (M.D. Ala. Apr. 8, 2010)(finding jurisdictional amount was satisfied based on underlying plaintiff's attorney's demand letter.); *and Cotton States Mut. Ins. Co., Inc. v. Peacock,* 949 F. Supp. 823, 824 (M.D. Ala. 1996)(denying defendant's motion to dismiss holding that the amount in controversy in the declaratory judgment action should be determined on the basis of the policy limit exposure in the underlying case and a determination of whether the plaintiffs in the state court action are limiting their claim to less than the jurisdictional limit.) In short, since the written settlement demand in the related underlying action is well in excess of $75,000, Plaintiff has proven by the preponderance of the evidence that the jurisdictional amount is satisfied.

### B. The amount in controversy exceeds $75,000 because the underlying state court litigation involves a wrongful death lawsuit. And the average verdict for wrongful death cases in Alabama easily exceeds $75,000.

Both common sense and case law show us that the amount in controversy in this declaratory judgment action is intrinsically linked to the verdict value of the underlying state court action. The underlying state court action involves a non-medical death case. **The average verdict for non-medical death cases in Alabama for years 2002-2009 is $3,555,232**. *See Alabama Jury Verdict Reporter,* 8th ed., p. 145 (2009). Therefore, it is more likely than not that the amount in controversy here exceeds the jurisdictional floor of $75,000. *See Employers Mut. Cas. Co. v. Evans,* 76 F. Supp. 2d 1257, 1262 (N.D. Ala. 1999)(denying the Defendant's Motion to Dismiss in an insurance coverage declaratory judgment action and concluding that it should retain jurisdiction to hear both the duty to defend and the indemnification issues because "both discretion and common sense mandate that the court retain jurisdiction at least until the duty to defend issue is determined.") The *Evans* decision is helpful because, like here, the federal

14

plaintiff contended the amount in controversy exceeded $75,000, but the underlying plaintiff sought *unspecified* compensatory and punitive damages. *Id.* at *1259*. Importantly, the *Evans* Court looked to other Alabama cases which closely resembled the underlying litigation and concluded that since those similar cases had jury verdicts that "easily exceed the statutorily required amount" the amount in controversy was satisfied. *Id.* at 1260. In a similar circumstance, this Court again found the jurisdictional amount to be satisfied by looking to Alabama jury verdicts for punitive damages claims. *See Johnson v. Ansell Protective Products,* CA 08-0394-CG-C, 2008 WL 4493588 (S.D. Ala. Oct. 2, 2008) (stating "[a]s has been demonstrated by the Alabama Jury Verdict Reporter, awards of punitive damages in this state typically of themselves alone exceed the jurisdictional minimum[ ] of this court and accordingly, the amount in controversy in this case has been met.") Here- just like it did in *Evans* and *Johnson*- the court can look to the average $3,555,232 verdict amount for non-medical death cases which are comparable to the underlying wrongful death action and find that this insurance coverage action easily exceeds the jurisdictional minimum.

## C.    White-Spunner's defense costs already exceed the jurisdictional minimum.

Even if this Court decides to stay or dismiss the indemnity aspect of the case, the defense costs for White-Spunner already exceeds the minimal jurisdictional amount because White-Spunner has already incurred over $130,000 in defense costs and that figure is expected to increase significantly as the trial draws closer. *See* Affidavit of William Daniels, attached as Exhibit "C." To the extent White-Spunner is allowed to proceed with a determination of the carriers' obligation to provide a defense, the amount at issue exceeds the minimum $75,000 for this court to maintain jurisdiction.

In sum, the amount sought by the underlying plaintiff ($15,000,000), the average $3,555,232 verdict amount for non-medical death cases in Alabama, and the amount paid for White-Spunner's defense all separately exceed the minimum necessary for this court to exercise its jurisdiction to decide the matter. Therefore, Plaintiff has proven by the preponderance of the evidence that the amount in controversy exceeds $75,000.

**IV. This Action should not be stayed and is ready for a prompt determination in this forum.**

      **A. The *Triple R* Florida case cited by Defendants is distinguishable and Alabama law disfavors staying this case.**

All three Defendants –in one form or another- assert the fall-back argument of staying this case should this Court rightly decide to deny their Motions to Dismiss. Employer's Mutual does not cite any case law but gives only a single sentence to support staying this action. Employer's Mutual simply argues "[t]he basis for determining Plaintiff's additional insured status is dependent upon the allegations and evidence in the underlying state court action which should be discovered during the course of the underlying state court action." *See* Doc. 20, p. 4, ¶ 11. Zurich cites a single 2007 Florida case- *Triple R Paving, Inc. v. Liberty Mut. Ins. Co.*- to prop up its argument for staying this action. *See* Doc. 24, p. 5, ¶ 7. Owner's Insurance cites this same Florida case and discusses it at length.

*Triple R Paving, Inc. v. Liberty Mut. Ins. Co.*, is easily distinguishable because, in that case, <u>the insurer conceded that it had a duty to defend</u> Triple R "because the allegations of the [underlying] complaint could give rise to liability for which Liberty Mutual would be responsible." 510 F. Supp. 2d 1090, 1094 (S.D. Fla. 2007). Here, there would be no urgent need for this declaratory judgment action if the Defendant Insurers would concede that they owe Plaintiff a complete duty to defend based on the allegations of the underlying Complaint. Even the *Triple R Paving, Inc. v. Liberty Mut. Ins. Co.*, decision notes: "It is settled law that an

16

insurer's duty to defend is based solely on the allegations of the complaint." 510 F. Supp. 2d 1090, 1097 (S.D. Fla. 2007) at FN 1 *citing Trizec Prop., Inc. v. Biltmore Construction Co.,* 767 F.2d 810, 811 (11th Cir.1985).

Despite the concession, the *Triple R* Court got hung up on Liberty Mutual's duty to defend Triple R as an "additional insured" under the Liberty Mutual policy because the underlying complaint in that case also targeted Triple R for its own negligence in failing to warn. *Id. at* 1095. So the court pushed back from issuing a declaratory judgment at that time since it did not know "where the ultimate liabilities lie." *Id.* This Court does not have that same problem. Here, White-Spunner has not been sued for failing to warn. Rather, the underlying Complaint and Amended Complaint center allegations only on the construction of handrails which White-Spunner did not construct. Therefore, it is clear that the White-Spunner could only be held vicariously liable for the conduct of Defendants' insureds and there is no reason for this Court to stay this action as the *Triple R* Court did. The *Triple R* decision is merely persuasive authority in any event.

Defendants' reliance on Florida law with respect to staying this action is further misplaced because Alabama law summarizes the determination of an insurer's duty to defend as follows:

An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured." *Ajdarodini* v. *State Auto Mut. Ins. Co.,* 628 So. 2d 312,313 *(Ala.* 1993); *Ladner & Co., Inc.* v. *Southern Guar. Ins. Co.,* 347 So. 2d *100,102 (Ala.* 1977). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler* v. *Alabama Mun. Ins. Co.,* 585 So. 2d 1365, 1367 (Ala. 1991) (internal citations omitted). Where the allegations of the complaint show no injury alleged is within the coverage of the policy or where the allegations are ambiguous, "the court is not limited to the bare allegations of the complaint ... but may also look to facts which may be proved by admissible evidence."

17

*Colony Ins. Co.* v. *Griffin,* 2007 U.S. Dist. LEXIS 86783 at * 28-29 (M.D. Ala. 2007).   Just

because this Court may end up considering facts proved by admissible evidence to determine the

Defendants' duty to defend does not mean the court needs to dismiss or stay this action in light

of the state court action.   Under Defendants' approach, it would never be appropriate for a court

to determine an insurer's duty to defend until the underlying litigation was concluded. Clearly,

that is not and has never been the law in this district.   In *GMC Concrete,* the defendants made a

similar argument which Judge Steele summarily rejected:

> Also, the Court is not swayed by defendants' argument in their reply brief that "[c]overage
> issues will be better defined once the parties know exactly what transpired" and that this
> action should be stayed "until the facts relating to the underlying state case in Mississippi
> have been decided." Defendants seem to be assuming that the [underlying state court
> action] will result in a detailed recitation of findings of fact concerning the underlying
> conduct that can then be plugged into the insurance policy language to make coverage
> determinations. In the vast majority of civil actions, of course, there are no such findings
> of fact. Juries are not typically asked to render detailed factual findings of "exactly what
> transpired," and defendants fail to explain why they believe the Mississippi action will
> elicit such determinations. Nor have defendants shown any significant overlap between
> liability facts (which will be decided in the Mississippi case) and coverage facts (which are
> at issue here).

*GMC Concrete Co., Inc.,* 2007 U.S.Dist. LEXIS 90428 at *19 n. 12.

     As Judge Steele observed in *GMC Concrete,* the mere fact that the Court may consider

facts outside of the complaint to determine whether a duty to defend may exist does not act as an

impediment to a determination of the insurer's duty to defend.   To the contrary, the determination

of the insurer's duty to defend should be made "at the preliminary stage of the proceedings."

*Colony Ins. Co.* v. *Floyd's Prof'l Tree Serv.,* 2008 U.S. Dist. LEXIS 52747 (M.D. Ala.).

### B. Considerations of practicality and wise judiciary administration do not justify staying or dismissing this declaratory judgment action.

     The duty-to-defend issues do not overlap with the issues in the underlying case.   Owners

Insurance states in its brief that "coverage of White-Spunner as an additional insured under the

Owners Insurance policies appear restricted to provide that White-Spunner is an additional insured only with respect to liability arising out of the named insured's work for White-Spunner." *Owners' Brief in Support of Motion to Dismiss* [Doc. 13], Pg. 7. However, Owners concedes that "Dueitt's complaint in CV-2009-901356 alleges, *inter alia* that White-Spunner's liability arises out of the wrongful actions or inactions of his subcontractors." *Citing* Exhibit "1", ¶6. *Owners Insurance Brief in Support of Motion to Dismiss*, Pg. 3. Therefore, the duty to defend, which is based on the pleadings, can be decided by this Court immediately without involving any of the factual issues in the underlying case.[5] Conversely, a general verdict in favor of Dueitt in the underlying case would not resolve any of the coverage issues.

In analyzing Defendants' Motions to Dismiss, this Court's inquiry should focus on whether considerations of practicality and wise judiciary administration justify staying or dismissing a declaratory judgment action, rather than hearing it. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The underlying action would not resolve this entire matter because the Defendants are not parties to the state court action. *See State Farm Fire & Cas. Co. v. Knight*, 2010 WL No. 551262 (S.D. Ala. Feb. 11, 2010) (denying Motion to Stay Declaratory Judgment in light of pending state court claim where the insurer was not a party to the underlying action and the coverage issue animating the Declaratory Judgment action was not joined in the underlying action). Here, like the *Knight* case, the jury in the underlying action would not be able to resolve the issues related to coverage but instead would be focusing simply on broader liability theories presented by the underlying Plaintiff (i.e. wantonness and negligence.) Thus a

---

[5] See *Guaranty Nat. Ins. Co. v. Beeline Stores, Inc.*, 945 F.Supp 1510, 1513 (M.D. Ala. 1996) "An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured." Citing *Alfa Mutual Ins. Co. v. Morrison*, 613 So.2d 381, 382 (Ala.1993); *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala.1977). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Id*, at 1513 *Chandler v. Alabama Mun. Ins. Co.*, 585 So.2d 1365, 1367 (Ala.1991) (internal citations omitted).

separate declaratory judgment action will be necessary in any event and these coverage issues are best decided now in this forum. This Court's determination of insurance coverage would not conflict with a jury's determination of liability in the underlying action. Rather this Declaratory Judgment action would clarify the legal relations of Defendants and White-Spunner with respect to the underlying claims. This Court's declaratory ruling would provide substantial benefits to all parties by affording them certainty as to the currently murky status of Defendants' duties to White-Spunner and the availability of Defendants' resources for any settlement or judgment that may be asserted against White-Spunner in the underlying action.

In *State Farm Fire and Cas. Co. v. Knight*, this Court clarified that "[t]here is nothing 'wasteful' or 'piecemeal' about having a state court lawsuit fix an insured's liability for an underlying personal injury claim, while a contemporaneous federal lawsuit ascertains whether the insurer's coverage obligations for that personal injury claim have been voided by the insured's post-loss conduct." 2010 WL No. 551262, at \*3 (S.D. Ala., February 11, 2010). Likewise, following the same reasoning, the determination here of whether Defendants owe White-Spunner a duty to defend is not "wasteful" or "piecemeal." Therefore, considerations of practicality and wise judiciary administration do not justify staying or dismissing this declaratory judgment action because White-Spunner's claims are not premature and the underlying state court action will not resolve this entire matter.

## C.    The *Ameritas'* Guideposts Discourage this Court's exercise of abstention.

The Defendants have vaguely hinted at the *Wilton/Brillhart* doctrine in their Motions to Dismiss and may flesh it out further in their replies to this Opposition. So White-Spunner wants to be clear that the underlying action is not "parallel" with this action because the parties, arguments and issues in this case differ from those in the underlying action. *See Atl. Cas. Ins.*

20

*Co. v. GMC Concrete Co., Inc.*, CIV.A. 07-0563WSB, 2007 WL 4335499 (S.D. Ala. Dec. 7,

2007). However, even if this action were considered "parallel" thereby putting the *Ameritas*'

guideposts into play, those guideposts disfavor abstention. In the case of *Ameritas Variable Life*

*Ins. Co. v. Roach*, the Eleventh Circuit furnished District Courts with guidance on how to wield

their discretion on hearing matters under the Declaratory Judgment Act by providing a non-

exhaustive set of "guide posts" to be considered[6], including:

1.   The state's interest in deciding the matter;

2.   Whether a judgment in the federal action would completely resolve
     the controversy;

3.   Whether the Declaratory Judgment action would clarify the parties'
     legal relations;

4.   Whether the federal action amounts to procedural fencing;

5.   Whether a ruling in a federal action would increase friction
     between federal and state courts or otherwise encroach on state
     proceedings;

6.   Whether a superior alternative remedy exists;

7.   Whether underlying facts are important to inform resolution of
     the matter;

8.   Whether the state court is better situated than the federal court
     to evaluate those facts;

9.   The nexus (if any) between the underlying issues and the state law/
     policy, and whether federal common or statutory law requires
     resolution of the Declaratory action.

*411 F.3d at 1331.* As regards *Ameritas*' guidepost no. 1 (the state's interest in deciding the

matter), there are no overlapping state-law questions of whether Defendants owe a duty to

defend White-Spunner for the underlying claims. In fact, the state court jury may not even delve

---

[6] In conjunction with *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) for "parallel" cases only.

with necessary detail into the facts necessary to determine the defendants' duty to defend; the defendants are not even parties to that litigation. Rather, the state court's focus will be on the general allegations brought by the underlying Plaintiff- not on highly technical coverage issues. So the declaratory judgment action at bar would not snatch any judiciable issue from the Alabama state court and is properly decided now in this forum.

Under guidepost nos. 2 and 3, a judgment in the federal action would completely resolve the coverage issues between Defendants and White-Spunner. The "controversy" at bar is unequivocally centered on insurance coverage (as regards guidepost 2). And a declaratory judgment would completely clarify the legal relations between Defendants and White-Spunner (as regards guidepost 3).

As to guidepost no. 4, there is no indication of any "procedural fencing." Rather, White-Spunner is seeking a narrow determination of insurance coverage that will not be addressed in the state court action. And the duty to defend issue is of urgent and paramount importance.

As to guidepost no. 5, the issues to be resolved in the underlying action are separate from the issues at bar in this declaratory judgment action which reduces the "friction" between the federal court and state court. Defendants' duty to defend, while related to the state court proceedings, involves entirely separate insurance contracts to be interpreted by this court. This court's determination will affect White-Spunner's funding of defending the state court litigation but it will have no *res judicata* effect on the judicial outcome of the state court action. Accordingly, guidepost no. 5 disfavors abstention.

Guidepost no. 6 disfavors abstention because, White-Spunner does not have a "superior" alternative remedy. The Defendants' have already denied its claim for a duty to defend. And

now White-Spunner has to obtain an adjudication in this forum to protect itself. Thus, guidepost no. 6 pushes back from abstention.

As to guidepost no. 7, the facts of the underlying litigation would be important to an informed resolution of this matter. But those facts can be garnered from the allegations of the underlying complaint and the insurance policies currently available. There is no question that this court can decide duty-to-defend issues with or without a final determination in the underlying state court action. So guidepost no. 7 does not favor abstention.

Similarly, as to guidepost no. 8, this Court is actually in a better position than the state court to evaluate the coverage issues since Defendants are not parties to the underlying litigation. Again, the state court litigation would not go into necessary detail to determine Defendants' duties to defend or duties to indemnify because the focus of the underlying litigation is on broader tort claims.[7] This Court is uniquely situated to analyze the specific scope of the coverage issues sitting before it. While it is true that the underlying action could render moot the question of Defendants' duty to indemnify White-Spunner (if the jury found in favor of all Defendants in the underlying action), White-Spunner would have to incur a significant amount of additional expenses in defending itself through such a determination. Accordingly, guidepost no. 8 leans away from abstention.

Lastly, as to guidepost no. 9, this Court will apply Alabama law in determining the coverage issues but the underlying issues do not create any unusually-sensitive nexus between the underlying issues and Alabama's policy concerns. So this guidepost is fairly neutral.

Collectively, these nine guideposts present an unconvincing case for abstention. It is no surprise since the state court action focuses generally on the issue of *tort liability* and this action focuses on the specific issue of *insurance coverage.* Therefore, this Court should decline to

---

[7] In fact, any mention of "insurance" would be prohibited in the state court trial by Ala. R. Ev. No. 411.

exercise its discretion in favor of staying this action. In sum, the considerations of practicality and wise judiciary administration do not justify staying or dismissing this Declaratory Judgment action.

## Conclusion

There is no reason for this court to dismiss or stay this action. The Estate of Dueitt is not a necessary party and any interest it has in this litigation is perfectly aligned with and already represented by White-Spunner. The amount in controversy easily exceeds the amount in controversy in light of the $15,000,000 demand in the underlying case, the $3,555,232 average verdict amount for recent non-medical death cases in Alabama and the cost of defense incurred by White-Spunner to date. This lawsuit is not premature or unripe because White-Spunner is seeking a determination of Defendants' current duty to defend. Considerations of practicality and wise judiciary administration do not justify staying this declaratory judgment action because the underlying state court action will not resolve this entire matter and even the *Ameritas'* guideposts disfavor abstention.

It is not hard to see the need for a prompt determination in this venue. A determination here would allow all parties to move forward with clarity of their respective rights and a better grasp of their exposure, settlement strategy, and cost-of-defense in the underlying action. This Court has all it needs to decide the duty to defend under the three subject policies right now. The duty to defend is based on the pleadings and policies currently before the Court and can be decided without involving any of the factual issues in the underlying case. But a general verdict in favor of Dueitt in the underlying case would not resolve any of the coverage issues and we will be back to where we are now. To stay or dismiss this action in its entirety would deprive White-Spunner of its right to a prompt resolution of the outstanding coverage issues, and would

24

in no way promote the objectives of efficiency, comity, federalism, and non-interference with state-court proceedings on which the *Wilton/Brillhart* doctrine is founded.

WHEREFORE, PREMISES CONSIDERED, White-Spunner asks this Court to not exercise its discretion to stay or dismiss this declaratory judgment action pending resolution of the underlying action and to DENY Defendants' pending Motions to Dismiss in whole.

Respectfully submitted this the 15th day of June, 2010.

/s/Kile T. Turner
Kile T. Turner, asb-8182-u83k
**Attorney for Plaintiff White-Spunner Construction, Inc.**

OF COUNSEL:
NORMAN, WOOD, KENDRICK & TURNER
Financial Center – Suite 1600
505 20th Street North
Birmingham, Alabama 35203
Phone: (205) 328-6643
Direct Line: (205) 259-1033
Fax: (205) 251-5479
Email: kturner@nwkt.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the E-File System and that I have served a copy of the foregoing electronically or by placing a copy of same in the U.S. Mail, postage prepaid and properly addressed on this the 15th day of June, 2010, as follows as directed by the Court:

Thomas M. O'Hara
Amelia T. Driscoll
McDowell Knight Roedder & Sledge, LLC
Post Office Box 350
Mobile, Alabama 36601

Roger S. Morrow, Esq.
Joel H. Pearson, Esq.
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
Montgomery, AL 36103-4804

James A. Kee, Jr., Esq.
Jon M. Hughes, Esq.
Cynthia A. Martin, Esq.
Kee & Selby, L.L.P.
1900 International Park Drive
Suite 220
Birmingham, AL 35243

s/Kile T. Turner
OF COUNSEL

F:\KILE\6757- White-Spunner\Pleadings\006.WhiteSpunner's Response to Owners Ins' Motion to Dismiss.doc